# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| _____ | ) | |
| JOHN COLLINS and | ) | |
| CHRISTINE COLLINS, | ) | |
| Plaintiffs | ) | |
| | ) | |
| V. | ) | Case No. 3:17-cv-00798 |
| | ) | Jury Trial Requested |
| PORTFOLIO RECOVERY | ) | |
| ASSOCIATES, LLC;        and | ) | |
| PIONEER CREDIT RECOVERY | ) | |
| Defendants | ) | July 31, 2017 |
| _____ | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT
## FOR CIVIL PENALTIES AND OTHER RELIEF

Plaintiffs, John Collins and Christine Collins, allege as follows:

## JURISDICTION AND VENUE

1.      This is an action arising under the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. §1692 et seq, to obtain monetary civil penalties, for Defendants'

violations of the FDCPA.

2.      This Court has jurisdiction over this matter under 28 U.S.C. §§1331, 1337(a), and

1355; and under 15 U.S.C. §§ 1692, et seq.

3.      Venue is proper in the United States District Court for the District of Connecticut

under 28 U.S.C. §§ 1391(b)-(c).

## SUPPLEMENTAL OR CONCURRENT JURISDICTION

4.      The United States District Court for the District of Connecticut has supplemental jurisdiction over State law claims in this matter pursuant to 28 U.S.C. § 1367(a).

## PLAINTIFFS

5.      John Collins and Christine Collins  are natural persons and citizens of Connecticut residing in the Town of Coventry, County of Tolland, and State of Connecticut, and are consumers as defined by the Fair Debt Collection Practice Act, 15 U.S.C. § 1692a(3); references to "Plaintiff" or "Plaintiffs" herein refer to all Plaintiffs or either of them.

6.      At all times relevant hereto, by directing collection efforts to the Plaintiffs' home, the Defendants alleged that the Plaintiffs owed a debt, and that the Plaintiffs were the object of Defendant's efforts to collect a consumer debt.

## DEFENDANTS

7.      Portfolio Recovery Associates, LLC ("PRA") is a limited liability company created and existing pursuant to the laws of the State of Virginia.  At all times relevant to this Complaint, Defendant PRA has transacted business in this District, and is licensed as a Consumer Collection Agency in Connecticut.

8.      Pioneer Credit Recovery, Inc. ("Pioneer") is a corporation created and existing pursuant to the laws of the State of New York. At all times relevant to this Complaint, Defendant Pioneer has transacted business in this District and is licensed as a Consumer Collection Agency in Connecticut.

9.      Defendant PRA authorized other debt collectors to collect the debt at issue in this case and is therefore liable for the acts or omissions of any of said debt collectors.

10.      Upon information and belief, Defendants are "debt collectors" as defined by the Fair Debt Collection Practice Act, 15 U.S.C. § 1692a(6).[1]

11.      Upon information and belief, the Defendants' principal business is the collection of defaulted consumer debt.

12.      As used in this Complaint, the term "Defendants" refers to all of the Defendants or any of them.


## DEFINITIONS

13.      The term "consumer" as used in this Complaint means any natural person obligated or allegedly obligated to pay any debt as "debt" is defined in 15 U.S.C. § 1692a(5).

14.      The term "person" as used in this Complaint means "person" as used in 15 U.S.C. 1692k(a).

15.      The term "location information" as used in this Complaint means a consumer's place of abode and the consumer's telephone number at such place, or the consumer's place of employment, as defined by the Fair Debt Collection Practice Act, 15 U.S.C. § 1692a(7).

16.      The term "communication" as used in this Complaint is synonymous with the definition of communication as defined in Section 4 of the Fair Trade Commission Act, 15 U.S.C §1692a(2).

---

[1]See the Findings and Conclusions of the United States Consumer Financial Protection Bureau in its Consent Order: Portfolio Recovery Associates, LLC, 2015 C.F.P.B. 0023 (Consent Order, File No. 2015-CFPB-0023).

## DEFENDANTS' BUSINESS PRACTICES

17.     The Defendants provide debt collection services throughout the United States, including in Connecticut.

18.     The Defendants use both automated and human operators to collect purported debts via telephonic means and methods.

19.     The Defendants have used, and continue to use, abusive, harassing, fraudulent, deceptive, and misleading representations in telephone communications with the Plaintiffs, without verifying that the Plaintiffs owe or owed any such debt, and despite Defendant PRA's admission that Plaintiffs do not owe any debt to them.

20.     The Defendants, by telephonic means and methods, have pressured and/or threatened Plaintiffs, and continue to pressure and/or threaten the Plaintiffs, to pay purported debts that have not been verified and do not exist.

21.     Upon information and belief, the Defendants do not intentionally buy commercial or business accounts.

22.     Upon information and belief, Defendants' form letters and collection notices provide notices required by the FDCPA.

23.      Upon information and belief, Defendants have periodic statements for the account underlying the purported debt that show the account was a consumer account, or they have the ability to obtain said periodic statements.

## FACTS COMMON TO ALL COUNTS

24.   At all times relevant hereto the Plaintiffs had no relevant outstanding debt, and asserted the same to Defendant PRA.

25.   At all times relevant hereto, Defendants PRA and Pioneer alleged that Plaintiffs owed a debt, thereby categorizing them as "consumers" under the FDCPA's definition of a consumer.

26.   From the time period of September of 2015 through at least December 15, 2016, the Plaintiffs received at least 42 calls from Defendant PRA and 34 calls from Defendant Pioneer in an attempt to collect a purported debt.

27.   Said phone calls sometimes included harassing, abusive, and/or oppressive language or conduct, such as:

a.   with respect to Defendant PRA, asking for one of the Plaintiffs, then hanging up on one of the Plaintiffs after they identified themself;

b.   with respect to Defendant PRA, leaving voice messages on the family answering machine threatening to take legal action if the debts were not satisfied;

c.   calling several times a week at all hours of the day; and

d.   with respect to Defendant PRA, intentionally inciting argument with the Plaintiffs.

28.   On numerous occasions, through the means described in paragraphs 17 through 23 above, Defendants have directly and indirectly represented to Plaintiffs, both expressly and by implication, that the debts are valid and that Plaintiffs had an obligation to pay these debts.

5

29.     At all times relevant hereto, Defendants did not, and do not, have a reasonable basis for the above representations.

30.     At all times relevant hereto, Defendant PRA made no efforts to explain the nature or source of the underlying account, choosing instead to insist over Plaintiffs' objections that the Plaintiffs owed a debt.

31.     On one or more occasion, Defendant PRA demanded personal identifying information from the Plaintiffs without explaining the underlying basis for needing such information, causing the Plaintiffs in turn to believe that PRA was attempting to fraudulently collect money from the Plaintiffs.

32.     On or about February 25, 2016, in response to the continued harassment by Defendant PRA, the Plaintiffs notified Connecticut's Office of the Attorney General ("OAG") about the Defendant PRA's misleading, deceptive, annoying, and harassing collection practices.

33.     The Connecticut OAG thereupon referred Plaintiffs' allegation to the Connecticut Department of Consumer Protection for further inquiry and investigation.

34.     Upon receipt of said referral from the Connecticut OAG, the Connecticut Department of Consumer Protection contacted Defendant PRA and notified it of the complaint.

35.     On or about March 24, 2016, the Defendant PRA sent a letter to both the Connecticut Department of Consumer Protection and the OAG stating, among other things, that the Plaintiffs were "not the person we were seeking to contact and we regret the consumer's inconvenience. We have removed the consumer's telephone number from our calling system, blocked all outbound calls from PRA to the consumers' telephone number and updated the records with which the consumer's telephone number had been associated." See Letter attached

hereto as Exhibit A.

36.     Starting on or about August 12, 2016, approximately five months after receipt of PRA's apology letter, the Plaintiffs began to again receive violative phone calls described above, including calls from PRA requesting the Plaintiffs by name.

37.     In response to the renewed phone calls, the Plaintiffs again contacted the OAG, which in turn re-opened its inquiry into Defendant PRA's behavior and contacted PRA in September.

38.     In response to the Connecticut OAG's renewed contact, PRA responded with a second letter, again acknowledging that it had made multiple communications to Plaintiffs, and conceding that the Plaintiffs were not the target consumer.  See attached Exhibit B.

39.      Subsequent to sending its second letter to the OAG, PRA ceased communications with the Plaintiffs on September 12, 2016.

40.     Within seven days after calls ceased from PRA, calls to the Plaintiffs' private telephone number began arriving from other debt collectors, including from Defendant Pioneer, in the same manner and frequency as the calls from PRA.

41.     On September 19, 2016, the Plaintiffs received a phone call and collections voice mail from Defendant Pioneer on their home answering machine.

42.     After the first call on September 19, Plaintiffs received dozens of additional calls from Defendant Pioneer, often multiple times per day.

43.     At no time did Defendant Pioneer or Defendant PRA ever send a notice to Plaintiffs explaining the debt.

44.     By repeatedly calling the Plaintiffs' home telephone, Defendants Pioneer and

PRA alleged that the Plaintiffs owed a debt.

45.     Before the calls from Defendant PRA began, Plaintiffs had never received any debt collection calls at their home phone number or otherwise.

46.     Upon information and belief, Defendant PRA assigned collection efforts on this debt to other debt collectors and appropriated the Plaintiffs' location information to that effect, knowing at the time it did so that the debt it sought from Plaintiffs was invalid against the Plaintiffs.

47.     At all times relevant hereto, Plaintiffs have disputed the validity of said alleged debt to PRA, including by both written and verbal communication in response to the repeated calls.

48.     PRA's letters to the Connecticut OAG in response to Plaintiff's letters indicate that PRA was attempting to collect a consumer debt by stating that it was attempting to collect a debt from a "consumer."

49.     In its first letter to the OAG, Defendant PRA repeatedly acknowledges Plaintiffs' status as "consumers" by referring to the Plaintiffs as such: "the above-referenced consumer's complaint...," "...having been receiving at the consumer's telephone number...," "The consumer is not the person we were seeking to contact and we regret the consumer's inconvenience."  See attached Exhibit A.

50.     PRA again repeatedly refers to the Plaintiffs as "consumers" in its response to the second notice from the OAG.  See attached Exhibit B.

51.     During the period of time in which the Plaintiffs received calls at their home telephone, the Plaintiffs believed that the Defendants were attempting to collect a consumer debt

8

from them because the Defendants continuously alleged and informed Plaintiffs that the Plaintiffs owed a debt.

52.     The fact that PRA indicated that the Plaintiffs were not the consumer from whom it was attempting to collect a debt did not allay the Plaintiffs' belief that the Defendant PRA was attempting to collect a debt from them, as (1) PRA continued to call and demand to speak with Plaintiff John Collins by name, even after PRA issued its first apology, and (2) new debt collectors began alleging that the Plaintiffs owed a debt after PRA issued its second letter.

53.     The FDCPA covers persons who allegedly owe a debt, or are erroneously treated as a debtor by a debt collector, even if that person does not owe a debt.[2]

54.     Because the term "consumer" applies to both persons obligated to pay a debt and to persons allegedly but not actually obligated to pay a debt, the Plaintiffs are both "persons" and "consumers" under the FDCPA.[3]

55.     During one or more of its phone conversations with PRA, the Plaintiffs have made efforts to discover the account for which PRA attempted to collect, and to determine whether the account was for personal, family, or household purposes, but did not succeed in those efforts.[4]

---

[2] 15 U.S.C. 1692a(3), 15 U.S.C. 1692a(5).

[3] See Hunsinger v. SKO Brenner Am., Inc., 2013 U.S. Dist. LEXIS 107795, *7 (N.D. Tex. Aug. 1, 2013) (holding that the pro se plaintiff's denials that he owed the debt did not preclude him from being a consumer, and stating that  "It is sufficient for consumer status that he alleges that [the collector] informed him that he is obligated to pay the debt."

[4] "Placing the onus on the debt collector [to verify that the debts in question were not incurred primarily for personal, family, or household purposes] is consonant with the strong consumer protection policy that underlies the FDCPA. It also reflects a growing public awareness that many debt collectors have been less than diligent in verifying information about the debts that they are attempting to collect." Davis v. Hollins Law, 968 F. Supp. 2d 1072, 1080 (E.D. Cal. 2013).

56.     Based upon PRA's demands for payment and its language in its letters, indicating that the Plaintiffs were "consumers," PRA was attempting to collect on a consumer debt, which by definition under the FDCPA is for personal, family, or household purposes.

57.     Because the Plaintiffs were alleged by PRA to owe a debt, but did not in fact owe a debt, Plaintiffs cannot reasonably know the nature of the third party's debt absent discovery beyond its reasonable belief based upon knowledge of PRA's general practices and knowledge from public records.[5]

58.     Any person can assert a claim under the FDCPA.[6]

59.     Plaintiffs bring this suit as a consumer and as a person who has sustained damages as a result of Defendants' failure to adhere to the terms of the FDCPA.

60.     As a result of these repeated calls, Plaintiffs have sustained actual damages including but not limited to anxiety, worry, sleeplessness, fear, shortness of breath, annoyance, emotional distress, harassment, stress, court costs and legal fees.

---

[5] "[N]on-debtors may assert certain FDCPA claims against debt collectors for their attempts to collect debts from third parties.  In such cases, non-debtors cannot reasonably be expected to know the specific nature of a third party's debt without the benefit of discovery." Corson v. Accounts Receivable Mgmt., Inc., 2013 U.S. Dist. LEXIS 112282, *10 (D.N.J. Sept 2, 2014); "Where the consumer lacks knowledge of the exact nature of the charges on an account due to alleged identity theft, the alleged obligation on a consumer account will nonetheless constitute a debt for purposes of FDCPA analysis. Collins v. Portfolio Recovery Assocs., LLC, 2013 U.S. Dist. LEXIS 162624, *15 (E.D. Tenn. June 7, 2013); Chyba v. First Fin. Asset Mgmt., Inc., 2013 U.S. Dist. LEXIS 165276, *19 (S.D. Cal. Apr. 30, 2014) (holding that where the consumer disputed that she owed the account at all, the court found that to require her to allege that the debt was for personal, family, or household purposes "would render meaningless protections for consumers where the debt collector attempts to collect on a debt the consumer does not owe, and the nature of the alleged debt is unclear.").

[6] "...any debt collector who fails to comply with any provision of this subchapter with respect to *any person* is liable to *such person* to the equal sum of... actual damage sustained by such person as a result of such failure." 15 U.S.C. §1962(k) (emphasis added).

## COUNT ONE:  VIOLATION OF 15 U.S.C. § 1692c

1-60.    Paragraphs 1 through 60 of this Complaint are hereby incorporated and made the corresponding Paragraphs 1 through 60 of Count One.

61.    Section 1692c of the of the Fair Debt Collection Practice Act mandates that a debt collector must cease all communication with the consumer in the event that the consumer notifies the debt collector in writing refusing to pay the debt or asking the debt collector to cease communication, except to advise the consumer that the debt collector's further efforts are being terminated.

62.    The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

63.    The FDCPA is liberally construed in favor of the consumer to effectuate its purposes.

64.    By calling the Plaintiffs' number, Defendant PRA alleged that someone at that number owes the debt, thus triggering the protections of § 1692c.

65.    As detailed above, Plaintiffs qualify as "consumers" with standing to bring a claim under the FDCPA because the Defendants were attempting to collect on a consumer debt, and alleged the Plaintiffs to owe that debt.[7]

66.    In connection with the allegations described above, Defendant PRA has directly and/or indirectly violated Section 1692c of the of the Fair Debt Collection Practice Act by not ceasing all communications to Plaintiffs after receiving Plaintiffs' written request to stop the

---

[7] See Sussman v. I.C. Sys., Inc., 928 F. Supp. 2d 784, 793-794 (S.D.N.Y. 2013) (finding that allegations that the debt collector continued to call after being informed in writing that the consumer did not owe any debt and instructed the collector to stop harassing him stated a claim for violation of § 1692c(c)).

collection actions, and admitting in writing to OAG and Connecticut's Department of Consumer Protection that the Plaintiffs owed no debt.

67.     Such actions demonstrate an intentional and/or willful noncompliance with the Fair Debt Collection Practice Act, such that Defendant PRA knowingly continued to communicate illegally and improperly with the Plaintiffs after admitting that the Plaintiffs owed no debt.

68.     As a result of Defendant PRA's violations of 15 U.S.C. § 1692c, the Plaintiffs have suffered and will continue to suffer  damages, including but not limited to anxiety, worry, sleeplessness, fear, shortness of breath, annoyance, emotional distress, harassment, stress, court costs and legal fees.

## COUNT TWO:  VIOLATION OF 15 U.S.C. § 1692e

1-68.     Paragraphs 1 through 68of Count One of this Complaint are hereby incorporated and made the corresponding Paragraphs 1 through 68 of Count Two.

69.     Section 1692e of the of the Fair Debt Collection Practice Act prohibits the use of false, deceptive, or misleading representation or means in connection with the collection of any debt, including the false representation of the character of a debt, and the use of any false representation or deceptive means to collect or attempt to collect any debt.

70.     Section 1692e(2)(A) of the FDCPA  prohibits the false representation of the legal status of a debt, including that the debt is owed by the person subjected to calls by the debt collector.

71.     In its many communications to the Plaintiffs, including communications by virtue of calling repeatedly, the Defendants represented to Plaintiffs that Plaintiffs owed a debt.

72.     At all times relevant hereto, the allegations made by the Defendants that Plaintiffs owed a debt were false statements.

73.     A violation of 15 U.S.C. § 1692e can give rise to an injury in fact.[8]

74.      In connection with the allegations described above, the Defendants directly and/or indirectly used false, deceptive, or misleading representation or means in connection with the collection of a debt in violation of Section 1692e of the of the Fair Debt Collection Practice Act by actions including, but not limited to, the following:

a.     with respect to both Defendants, falsely representing that Plaintiffs owed the debt being sought after by Defendants;

b.     with respect to both Defendants, misrepresenting a debt owed and the alleged amount of said nonexistent debt;

c.     with respect to both Defendants, attempting to deceive and/or mislead Plaintiffs into believing that they owed the debt being charged by Defendants;

d.     with respect to both Defendants, attempting to unjustifiably coerce Plaintiffs into paying for a nonexistent debt.

---

[8]"Accordingly, 'making a false statement in connection with an attempt to collect a debt is sufficient harm for standing purposes. In other words, a plaintiff who receives such a misrepresentation "has suffered injury in precisely the form [§] 1692e of the FDCPA was intended to guard against."' (Citation omitted.) '[A]ctual damages are not required for standing under the FDCPA.' (Citation omitted.) '[T]he majority of post-Spokeo decisions that have analyzed standing under the FDCPA have found that alleging a use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt, establishes a concrete injury.'" (Citation omitted.) Feldheim v. Fin. Recovery Servs., Inc., No. 16-CV-3873 (KMK), 2017 WL 2821550, *6 (S.D.N.Y. June 29, 2017).

e.  with respect to Defendant PRA, continuing to represent to Plaintiffs that the Plaintiffs owed Defendants a debt after acknowledging Plaintiffs' written request for PRA to cease communication, and after admitting to Connecticut's OAG and Connecticut's Department of Consumer Protection that no debt was owed.

75.  Such actions further demonstrate an intentional and/or willful noncompliance with the Fair Debt Collection Practice Act, such that Defendant PRA continued to falsely represent that the Plaintiffs owed a debt after admitting that no debt was owed, and knowingly and intentionally continued to use false, deceptive, and/or misleading representation or means in connection with collecting upon a debt it knew was nonexistent.

76.  Because PRA continued to repeatedly subject the Plaintiffs to harassing phone calls even after acknowledging that it had attempted to collect the debt from the wrong consumer, the Plaintiffs continued to understand that PRA was attempting to collect a debt from them.

77.  As a result of the false statements made by PRA in its allegations, the Plaintiffs suffered and will continue to suffer injuries and damages, including but not limited to anxiety, worry, sleeplessness, fear, shortness of breath, annoyance, emotional distress, harassment, stress, court costs and legal fees.

78.  As a result of the false and  misleading representations by Defendant Pioneer that the Plaintiffs owed a debt, the Plaintiffs suffered and will continue to suffer injuries and damages, including but not limited to anxiety, worry, sleeplessness, fear, shortness of breath, annoyance, emotional distress, harassment, stress, court costs and legal fees.

14

## COUNT THREE: VIOLATIONS OF 15 U.S.C. § 1692g

1-78.      Paragraphs 1 through 78 of Count Two of this Complaint are hereby

incorporated and made the corresponding Paragraphs 1 through 78 of Count Three.

79.      Section 1692g of the Fair Debt Collection Practice Act mandates that within five

days after the initial communication with a consumer in connection with the collection of any

debt, a debt collector shall, unless said information is contained in the initial communication or

the consumer has paid the debt, send the consumer a written notice containing the following:

    a.      The amount of the debt;

    b.      the name of the creditor to whom the debt is owed;

    c.      a statement that unless the consumer, within thirty days after receipt of the

    notice, disputes the validity of the debt, or any portion thereof, the debt will be

    assumed to be valid by the debt collector;

    d.      a statement that if the consumer notifies the debt collector in writing

    within the thirty-day period that the debt, or any portion thereof, is disputed, the

    debt collector will obtain verification of the debt or a copy of a judgment against

    the consumer and a copy of such verification or judgment will be mailed to the

    consumer by the debt collector; and

    e.      a statement that, upon the consumer's written request with the thirty-day

    period, the debt collector will provide the consumer with the name and address of

    the original creditor, if different from the current creditor.

80.      By virtue of contacting and communicating with the Plaintiffs at their home

telephone, the Defendants triggered the obligations of FDCPA 1692g.

15

81.     Defendants did not send the verification notice to the Plaintiffs.[9]

82.     At all times relevant hereto, the Defendants failed to take any steps to comply with section 1692g, and indeed, Defendant PRA continued to attempt to collect the purported debt after admitting that the debt did not exist.

83.     Defendants' failure to provide the validation notice to plaintiffs violates § 1692g because the purpose of that section is to prevent just what happened here.[10]

84.     As a result of Defendants' violations of 15 U.S.C. § 1692g, the Plaintiffs have suffered and will continue to suffer damages, including but not limited to anxiety, worry, sleeplessness, fear, shortness of breath,  annoyance, emotional distress, harassment, stress, court costs and legal fees.

## COUNT FOUR: VIOLATION OF 15 U.S.C. § 1692d

1-84.     Paragraphs 1 through 84 of Count Three of this Complaint are hereby incorporated and made the corresponding Paragraphs 1 through 84 of Count Four.

85.     15 U.S.C. § 1692d proscribes debt collectors from engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, including causing a telephone to ring or repeatedly engaging persons via telephone repeatedly and continuously causing annoyance, abuse, or harassment.

---

[9] See Dunham v. Portfolio Recovery Assocs., L.L.C., 663 F.3d 997, 1002 (8th Cir. 2011) (holding that the plaintiff was entitled to invoke the FDCPA's verification protections and had standing to sue because a "consumer" includes an individual that debt collectors mistakenly dun, or who does not owe the debt).

[10] See Hart v. FCI Lender Servs., Inc., 797 F.3d 219, 221 (2d Cir. 2015) ("A particular goal of Congress was to address 'the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.' "); Jacobson v. Healthcare Fin. Serv., Inc., 516 F.3d 85, 89 (2d Cir. 2008).

86.     As explained above, Plaintiffs are persons under the FDCPA.

87.     As set forth above, through the means described in paragraphs 17 through 23, in connection with the collection of purported debts, Defendants directly or indirectly have engaged in conduct with the natural consequence of harassing, oppressing, annoying and abusing Plaintiffs, including:

    a.     numerous repetitive harassing phone calls;

    b.     with respect to Defendant PRA, use of rude and abusive language when speaking to Plaintiffs;

    c.     with respect to Defendant PRA, harshly demanding identification then abruptly hanging up the phone; and

    d.     with respect to Defendant PRA, refusing to identify who they were and from where they were calling.

88.     The intent of the communications described above, and the natural consequence of said communications, was to annoy, abuse, and/or harass the Plaintiffs.

89.     Plaintiffs felt harassed, annoyed, and abused by the Defendant's calls.

90.     The Plaintiffs' feelings of harassment, annoyance, and abuse was so severe with respect to Defendant PRA that they sought protection from the Connecticut OAG on two separate occasions relating to these calls.

91.     Defendant PRA's course of conduct continued with the intent to harass, annoy, and oppress the Plaintiffs even after Defendant admitted that Plaintiff did not owe them a debt.

92.     The acts and practices alleged in Paragraphs 46-48 thus constitute violations of 15 U.S.C. § 1692d.

93.     As a result of Defendants' violations of 15 U.S.C. § 1692d, the Plaintiffs have suffered and will continue to suffer damages, including but not limited to anxiety, worry, sleeplessness, fear, shortness of breath, stress, court costs and legal fees.

## COUNT FIVE: VIOLATION OF C.G.S. § 36a-812

1-93.     Paragraphs 1 through 93 of Count Five of this Complaint are hereby incorporated and made the corresponding Paragraphs 1 through 93 of Count Five.

94.     At all times relevant hereto, the Defendants acted as a consumer collection agency in Connecticut.

95.     Connecticut General Statutes § 36a-812 directs that consumer collection agencies shall comply with the Fair Debt Collection Practices Act, 15 U.S.C. 1692 et seq., as may be amended from time to time.

96.     From at least November of 2015, the Defendants consistently violated both Connecticut General Statutes § 36a-812 and contemporaneously 15 U.S.C 1692 et seq by using unfair, deceptive trade practices, as more thoroughly described above.

97.     As a result of Defendants' violations of C.G.S. § 36a-812, the Plaintiffs have suffered and will continue to suffer damages, including but not limited to anxiety, worry, sleeplessness, fear, shortness of breath, annoyance, emotional distress, harassment, stress, court costs and legal fees.

## DEMAND FOR RELIEF

WHEREFORE, pursuant to the above-cited statutes and the Court's own equitable powers, Plaintiff respectfully requests that the Court:

1.      Award Plaintiffs statutory damages as well as fair, just, and equitable money damages;

2.      Award Plaintiffs attorney's fees and costs of bringing this action; and

3.      Such other relief in law or equity as the Court may deem just, proper, and equitable.

PLAINTIFFS,
John Collins and Christine Collins

By:   /s/ John Q. Gale
      John Q. Gale, Juris No. ct 05206
      Law Offices of John Q. Gale, LLC
      363 Main Street, 4th Floor
      Hartford, CT 06106
      TEL: (860) 522-8296
      FAX: (860) 522-8298
      jgale@jqglaw.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____ )
                                  )
JOHN COLLINS and                  )
CHRISTINE COLLINS,                )
                    Plaintiffs    )
                                  )
V.                                )          Case No. 3:17-cv-00798
                                  )          Jury Trial Requested
PORTFOLIO RECOVERY                )
ASSOCIATES, LLC;        and       )
PIONEER CREDIT RECOVERY           )
                    Defendants    )          July 31, 2017
_____ )


## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiffs hereby

demand a trial by jury.


PLAINTIFFS,
John Collins and Christine Collins


By:   /s/ John Q. Gale
      John Q. Gale, Juris No. ct 05206
      Law Offices of John Q. Gale, LLC
      363 Main Street, 4th Floor
      Hartford, CT 06106
      TEL: (860) 522-8296
      FAX: (860) 522-8298
      jgale@jqglaw.com

## CERTIFICATION

I hereby certify that on July 31, 2017, a copy of the foregoing was filed electronically.

Notice of the foregoing filing and this Certification will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to any parties who are unable to accept electronic filing.

Parties may access the foregoing filing and this Certification through the Court's system.

 /s/ John Q. Gale
John Q. Gale, #ct05206
Law Offices of John Q. Gale, LLC
363 Main Street, 4th Floor
Hartford, CT 06106
TEL: (860) 522-8296
FAX: (860) 522-8298
jgale@jqglaw.com